No. 24-1301

In the United States Court of Appeals
for the Fourth Circuit

JACOB DOE,

*Plaintiff-Appellee,*

v.

THE UNIVERSITY OF NORTH CAROLINA SYSTEM, *et al.*,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Western District of North Carolina

**OPENING BRIEF OF DEFENDANTS-APPELLANTS**

JOSHUA H. STEIN
Attorney General

Lindsay Vance Smith
Special Deputy Attorney General

Nicholas S. Brod
Deputy Solicitor General

Sripriya Narasimhan
Deputy General Counsel

N.C. Department of Justice
Post Office Box 629
Raleigh, NC 27602
(919) 716-6400

*Counsel for Defendants-Appellants*

Marla S. Bowman
Litigation Counsel

Office of University Counsel
University of North Carolina
at Chapel Hill
123 W. Franklin St., Suite 600A
Chapel Hill, NC 27599-9105
(919) 962-1219

*Counsel for Defendant-Appellant
University of North Carolina at Chapel
Hill*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................iv

JURISDICTIONAL STATEMENT ............................................................ 1

ISSUES PRESENTED ............................................................................... 1

INTRODUCTION...................................................................................... 2

STATEMENT OF THE CASE ................................................................... 3

    A.    UNC-CH investigates reports of sexual assault under
        several policies. ....................................................................... 3

    B.    Multiple female students report Plaintiff for sexual
        assault ..................................................................................... 7

    C.    The reports against Plaintiff are investigated by the Equal
        Opportunity and Compliance Office ....................................... 9

    D.    After four evidentiary hearings, Plaintiff is found to have
        sexually assaulted two female students .............................. 11

    E.    Plaintiff appeals the hearing panels' findings of
        responsibility ........................................................................ 13

    F.    Plaintiff sues UNC-CH and others, claiming multiple errors
        in the disciplinary process he received ................................ 14

    G.    The district court partially denies Defendants' motions to
        dismiss ................................................................................... 17

SUMMARY OF ARGUMENT ...................................................21

ARGUMENT ........................................................................24

Standard of Review ...........................................................24

Discussion of Law .............................................................25

I.    Sovereign Immunity Bars Plaintiff's Due-Process And State-Law
      Claims Against Defendants .........................................25

      A.    The Constitution preserves the State's sovereign
            immunity ......................................................25

      B.    Sovereign immunity bars Plaintiff's due-process claim
            against the UNC Defendants..............................27

      C.    Sovereign immunity bars Plaintiff's state-law claims against
            the UNC Defendants..........................................31

      D.    Sovereign immunity bars Plaintiff's due-process claim
            against the Individual Defendants sued in their official
            capacities ....................................................33

II.   The Individual Defendants Are Entitled To Qualified Immunity on
      Plaintiff's Due-Process Claim .....................................34

      A.    In the student-discipline context, due process does not
            require the trappings of a full criminal trial ...........36

      B.    The Constitution does not require the trial-like procedures
            Plaintiff claims, let alone clearly so....................39

      C.    It was not clearly established that Plaintiff was deprived of a
            constitutionally protected right ...........................49

III.    The District Court Incorrectly Concluded That Plaintiff
        Successfully Stated a Title IX Claim ............................................. 53

        A.    Plaintiff's Title IX claim is properly before this Court ......... 54

        B.    Title IX claims require plausible particularized fact
              allegations showing that gender bias was the but-for cause of
              a plaintiff's injury .................................................................. 56

        C.    The district court failed to point to any specific,
              particularized allegations that would permit a reasonable
              inference of gender bias. ...................................................... 58

CONCLUSION ........................................................................................ 70

REQUEST FOR ORAL ARGUMENT

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Allen v. Cooper,*
589 U.S. 248 (2020). ....................................................... 26

*Alston v. N.C. Agric. & Tech. State Univ.,*
304 F. Supp. 2d 774 (M.D.N.C. 2004) ........................... 29

*Ashcroft v. al-Kidd,*
563 U.S. 731 (2011) ........................................................ 35

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ....................................... 7

*Atascadero State Hosp. v. Scanlon,*
473 U.S. 234 (1985). ................................................ 26, 32

*Ballenger v. Owens,*
352 F.3d 842 (4th Cir. 2003) ......................................... 33

*Bartges v. Univ. of N.C. at Charlotte,*
908 F. Supp. 1312 (W.D.N.C. 1995) ............................. 29

*Bartges v. Univ. of N.C. at Charlotte,*
94 F.3d 641, 1996 WL 460766 (4th Cir. 1996) ......... 29-30

*Bd. of Curators of Univ. of Mo. v. Horowitz,*
435 U.S. 78 (1978) ................................................... 36, 62

*Butler v. Rector & Bd. of Visitors of the Coll. of William & Mary,*
121 Fed. App'x 515 (4th Cir. 2005) ............................... 48

*Cantley v. W. Va. Reg'l Jail & Corr. Facility Auth.,*

771 F.3d 201 (4th Cir. 2014) ....................................................... 35

*Corum v. Univ. of N.C.*,
    413 S.E.2d 276 (N.C. 1992) ............................................ 32

*Costello v. Univ. of N.C. at Greensboro*,
    394 F. Supp. 2d 752 (M.D.N.C. 2005) ............................. 29

*Dixon v. Alabama State Bd. of Educ.*,
    294 F.2d 150 (5th Cir. 1961) ........................................... 37

*Doe v. The Citadel*,
    No. 22-1843, 2023 WL 3944370 (4th Cir. June 12, 2023)
    ........................................................................................ *passim*

*Doe v. Fairfax Cnty. Sch. Bd.*,
    384 F. Supp. 3d 598 (E.D. Va. 2019) .............................. 48

*Doe v. Miami Univ.*,
    882 F.3d 579 (6th Cir. 2018) .......................................... 57

*Doe v. Samford Univ.*,
    29 F.4th 675, 690-91 (11th Cir. 2022) ............................. 64, 66, 68

*Doe v. Stonehill Coll., Inc.*,
    55 F.4th 302 (1st Cir. 2022) ...................... 58, 65, 66, 69

*Doe v. Univ. of Ark.-Fayetteville*,
    974 F.3d 858 (8th Cir. 2020) .......................................... 57

*Doe v. Univ. of S. Ind.*,
    43 F.4th 784 (7th Cir. 2022) .................................... 63, 65

*Doe v. Univ. of Va.*,
    668 F. Supp. 3d 448 (W.D. Va. 2023) ............................. 53

*Doe v. Va. Polytechnic Inst. & State Univ.*,
    77 F.4th 231 (4th Cir. 2023) ................................................. *passim*

*Doe v. Va. Polytechnic Inst. & State Univ.*,
    No. 7:21-CV-378, 2024 WL 1417977 (W.D. Va. Apr. 2, 2024) ....... 43

*Doe v. Williams Coll.*,
    No. 3:20-CV-30024-KAR, 2022 WL 4099273 (D. Mass. Sept. 7,
    2022) ...................................................................................... 45

*Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co.*,
    95 F.4th 181 (4th Cir. 2024) ..................................................... 25, 55

*Ex parte Young*, 209 U.S. 123 (1908) ....................................................... 34

*Global Innovative Concepts, LLC v. Fla. Div. of Emergency Mgmt.*,
    No. 23-2053, --- F.4th ---, 2024 WL 3033746 (4th Cir. June 18,
    2024) ......................................................................... 26, 31, 32, 33

*Googerdy v. N.C. Agric. & Tech. State Univ.*,
    386 F. Supp. 2d 618 (M.D.N.C. 2005) ...................................... 29

*Haidak v. Univ. of Mass-Amherst*,
    933 F.3d 56 (1st Cir. 2019) ...................................................... 45, 46

*Heckman v. Univ. of N.C. at Chapel Hill*,
    19 F. Supp. 2d 468 (M.D.N.C. 1998) ........................................ 29

*Henson v. Honor Comm. of Univ. Va.*,
    719 F.2d 69 (4th Cir. 1983) ...................................................... 36, 37, 48

*Hooper v. N.C.*, 379 F. Supp. 2d 804 (M.D.N.C. 2005) ........................... 29

*Huang v. Bd. of Governors of Univ. of N.C.*,

902 F.2d 1134 (4th Cir. 1990) ............................................ 21, 28, 30

*Kashdan v. George Mason Univ.*,
70 F.4th 694 (4th Cir. 2023) ........................................ 56, 57, 67-68

*Kowalski v. Berkeley Cnty. Schs.*,
652 F.3d 565 (4th Cir. 2011) ........................................ 50

*Litman v. George Mason Univ.*,
186 F.3d 544 (4th Cir. 1999). ...................................... 25

*Md. Stadium Auth. v. Ellerbe Becket, Inc.*,
407 F.3d 255 (4th Cir. 2005). .................................... 28, 29

*Mallette v. Arlington Cnty. Emps.' Supplemental Ret. Sys. II*,
91 F.3d 630 (4th Cir. 1996) .......................................... 36

*McAdoo v. Univ. of N.C. at Chapel Hill*,
248 F. Supp. 3d 705 (M.D.N.C. 2017) ............................ 29

*McCleary-Evans v. M. Dep't of Transp., State Highway Admin.*,
780 F.3d 582 (4th Cir. 2015) ........................................ 56

*Monell v. Dep't of Soc. Servs. of City of N.Y.*,
436 U.S. 658 (1978) ...................................................... 28

*Moskos v. Hardee*,
24 F.4th 289 (4th Cir. 2022) ........................................ 44

*Nash v. Auburn Univ.*,
812 F.2d 655 (11th Cir. 1987) ...................................... 48

*Occupy Columbia v. Haley*,
738 F.3d 107 (4th Cir. 2013) ........................................ 24

*Paul v. Davis*,
424 U.S. 693 (1976) .................................................... 52

*Pennhurst State Sch. & Hosp. v. Halderman*, 4
    65 U.S. 89 (1984) ............................................................ 26

*Quern v. Jordan*,
    440 U.S. 332 (1979) ...................................................... 28

*Regents of the Univ. of Mich. v. Ewing*,
    474 U.S. 214 (1985) ...................................................... 50

*Regents of the Univ. of Cal. v. Doe*,
    519 U.S. 425 (1997) ...................................................... 26

*Roe v. St. John's Univ.*,
    91 F.4th 643 (2d Cir. 2024) ......................................... 58

*Rux v. Republic of Sudan*,
    461 F.3d 461 (4th Cir. 2006) ...................................... 54

*Schwake v. Ariz. Bd. of Regents*,
    967 F.3d 940 (9th Cir. 2020) ...................................... 57

*Sheppard v. Visitors of Va. State Univ.*,
    993 F.3d 230 (4th Cir. 2021) ........................ 50, 51, 57, 66

*Shrivinski v. U.S. Coast Guard*,
    673 F.3d 308  (4th Cir. 2012) ...................................... 52

*Smith v. Gilchrist*,
    749 F.3d 302 (4th Cir. 2014) ...................................... 35

*Smith v. State*,
    222 S.E.2d 412 (N.C. 1976) ........................................ 33

*Swint v. Chambers Cnty. Comm'n*,
    514 U.S. 35 (1995) ....................................................... 54

*Tigrett v. Rector & Visitors of Univ. of Va.,*
   290 F.3d 620 (4th Cir. 2002) ................................................. 50, 52

*United Mine Workers of Am. v. Gibbs,*
   383 U.S. 715 (1966) ................................................................. 24

*U.S. v. Morales-Matos,*
   723 Fed. App'x 213 (4th Cir. 2018) .................................... 44

*U.S. v Walker*, 799 F.3d 1361 (11th Cir. 2015) ...................... 64

*Valente v. Univ. of Dayton,*
   438 Fed. App'x 381 (6th Cir. 2011) ..................................... 45

*Will v. Mich. Dep't of State Police,*
   491 U.S. 58 (1989) ............................................................. 28, 33

*Wright v. N.C.,*
   787 F.3d 256 (4th Cir. 2015) ................................................. 24

*Yusuf v. Vassar College,*
   35 F.3d 709 (2d Cir. 1994) ................................................ 20, 57

## Federal Statutes

20 U.S.C. § 1681(a) .................................................................. 68

28 U.S.C. § 1331 ......................................................................... 1

28 U.S.C. § 1367 ......................................................................... 1

28 U.S.C. § 1291 ......................................................................... 1

42 U.S.C. § 1983 ......................................................................... 1

42 U.S.C. § 2000d-7(a)(1) .................................................................. 25

**State Statutes**

N.C. Gen. Stat. § 116-3.................................................................. 27, 30

N.C. Gen. Stat. § 116-4.................................................................. 28

**Regulations**

34 C.F.R. §106.45(b)(2)(i)(B) .................................................... 63

**Other Authorities**

Suzanne B. Goldberg, *Update on Court Ruling About the Dep't of Ed.'s Title IX Regulation*,
Dep't of Educ.: Off. for C.R. Blog (Aug. 24, 2021)............... 48-49, 63

# JURISDICTIONAL STATEMENT

The underlying lawsuit alleged claims under 42 U.S.C. section 1983, Title IX of the Education Amendments Act of 1972, and state law. The trial court had original jurisdiction of this action under 28 U.S.C. sections 1331 and 1367.

The district court issued an order on March 4, 2024, denying Defendants' motions to dismiss on grounds of sovereign and qualified immunity. Notice of Appeal was filed on April 2, 2024.

This Court properly has jurisdiction over this appeal under 28 U.S.C. section 1291, pursuant to the collateral order doctrine and pendent appellate jurisdiction.

# ISSUES PRESENTED

I. Was the district court wrong to conclude that Defendants were not entitled to sovereign immunity on Plaintiff's due-process and state-law claims?

II. Was the district court wrong to conclude that the Individual Defendants were not entitled to qualified immunity on Plaintiff's due-process claim?

III. Was the district court wrong to conclude that Plaintiff alleged sufficient facts to state a claim under Title IX?

## INTRODUCTION

During Plaintiff Jacob Doe's sophomore year at the University of North Carolina at Chapel Hill ("UNC-CH"), four female students reported that he had sexually assaulted them. When UNC-CH received these reports, it promptly initiated an investigation under its relevant policies concerning reports of sexual assault and harassment. After months of fact-gathering from the reporting students, other witnesses, and Plaintiff himself, the investigation culminated in four separate evidentiary hearings, at which Plaintiff was represented by counsel, to determine whether Plaintiff was responsible for the allegations against him. Plaintiff was ultimately found responsible for two of the alleged assaults and was expelled.

Despite the extensive process he received, Plaintiff filed this lawsuit claiming, among other things, violations of his due-process rights and Title IX. To support his claims, he points to a grab-bag of purported procedural errors in the investigation and adjudication of the reports against him.

These claims fail. Under this Court's clear precedent, Plaintiff's due-process and state-law claims against the University Defendants, as

well as his due-process claim against the Individual Defendants in their official capacities, are barred by sovereign immunity. And the Individual Defendants are entitled to qualified immunity on Plaintiff's due-process claim because he has not articulated the deprivation of a clearly established right. Likewise, Plaintiff's Title IX claim—which is predicated on the same procedural arguments as his due-process claim—fails on its face because Plaintiff has not plausibly alleged that any purported procedural irregularities were the result of gender bias.

In essence, Plaintiff's allegations show that his expulsion was the result of a detailed and extensive administrative process, in which he had ample opportunity to defend himself under procedures that met the requirements of due process and Title IX. The district court's order denying Defendants' motions to dismiss Plaintiff's complaint should therefore be reversed.

## STATEMENT OF THE CASE

### A. UNC-CH investigates reports of sexual assault under its policies.

UNC-CH's Equal Opportunity and Compliance Office investigates student reports of sexual assault, harassment, and discrimination. JA029. It does so under one of two different but related policies: UNC-

CH's Title IX policy and its sexual harassment policy. JA031-032. The Title IX policy applies to alleged sexual assault or harassment that occurs "at locations, events, or circumstances" over which UNC-CH exercises "substantial control." JA031-032. The broader sexual harassment policy applies to allegations that might fall outside the scope of the Title IX policy, including student conduct that occurs off campus that is likely to affect campus relations. JA032.

### 1. Title IX investigations.

Investigations under the Title IX policy involve several steps. A report of sexual harassment is first made to UNC-CH's Title IX coordinator, who is an administrator in the Equal Opportunity and Compliance Office. JA028, JA033. The coordinator then decides whether to refer the report to UNC-CH's Emergency Evaluation and Action Committee. JA028, JA033.

If a reporting student decides to file a "formal complaint," the Title IX investigation process begins and both the reporting and responding parties are provided with written notice of the investigation. JA033, JA035-036. Investigators, who are employees of UNC-CH assigned by the Title IX coordinator, must "have appropriate training and

experience investigating allegations of sexual harassment." JA036. These investigators are tasked with preparing a written investigative report that summarizes the evidence they obtain. JA036.

Once a draft report is prepared, the accused student is able to review the report, inspect the evidence gathered, and submit a written response before it is finalized and provided to a hearing panel. JA037. That panel is designated by UNC-CH, comprised of "trained individuals" who are UNC-CH employees or contractors, and overseen by a hearing officer or coordinator. JA037-038. The hearing panel conducts a live evidentiary hearing on the allegations, which includes the opportunity for both parties to be represented by counsel, examine witnesses, and present evidence and argument on their behalf. JA038. The hearing panel then makes a "final determination" about the responding student's responsibility for the alleged conduct, based on a preponderance of the evidence. JA039. That determination is conveyed in writing and may include disciplinary sanctions. JA039.

Students who disagree with the hearing panel's decision may appeal. JA040. The appeal is reviewed by an appeals officer, who is an "impartial decision-maker" chosen by UNC-CH. JA040. Decisions

involving suspension or expulsion may be further appealed to UNC-CH's Board of Trustees.  JA041.  Decisions by the Board of Trustees constitute a final decision and are not subject to further appeals.  JA041.

## 2.    Sexual harassment investigations.

Investigations under UNC-CH's broader sexual harassment policy are similar to Title IX investigations.  They also involve an initial assessment of the report and a potential referral to the Emergency Evaluation and Action Committee for interim measures, if necessary.  JA042-044.  They are conducted by trained investigators and include similar written notification to both parties and the ability to review and respond to draft investigative reports.  JA044-045, JA048.

Unlike investigations under the Title IX policy, however, the final investigative report under the sexual harassment policy includes a finding on whether the responding student violated the policy and a recommended sanction.  JA048.  After reviewing the final report, either party may then request a hearing on the finding and/or recommended sanction.  JA048-049.  If so, the matter is referred for a hearing and thus requires the hearing panel to make its "own assessment of whether

a policy violation occurred, based upon the relevant facts." JA048-049.
Like the Title IX policy, the sexual harassment policy also provides for
two levels of appeals for suspensions and expulsions. JA051-052.

### B. Multiple female students report Plaintiff for sexual assault.

What follows is a summary of the factual allegations in Plaintiff's
complaint, taken as true for purposes of Defendants' motions to dismiss.
*Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

Plaintiff Jacob Doe was a sophomore at UNC-CH during the 2020-
2021 school year. JA025. Late in the spring of that school year, four
female students—Roes 1 through 4—submitted a joint complaint to the
Equal Opportunity and Compliance Office, reporting that Plaintiff had
sexually assaulted them. JA068-069.

Roe 1 reported, among other incidents, that "[o]n or about
November 19, 2020," Plaintiff "engaged in sexual intercourse with [Roe
1] without her consent" while she was unconscious from alcohol
consumption. JA076-077, JA107.

Roe 2 reported that on one occasion at Plaintiff's fraternity house,
Plaintiff "engaged in sexual intercourse with [her] multiple times

throughout the evening and early morning without her consent." JA077-078.

Roe 3 reported that on one occasion at Plaintiff's "western North Carolina residence," Plaintiff "engaged in sexual intercourse with [her] without her consent." JA078.

Roe 4 reported that during the previous year's spring break, Plaintiff "grabbed [her] vagina and attempted to penetrate her vagina with [his] finger(s) without her consent." JA078. She also reported that on another occasion the previous summer, Plaintiff had "touched [her] breasts, pressed [his] penis into her back, and attempted to engage in sexual intercourse with her without her consent." JA078.

The Emergency Evaluation and Action Committee took immediate action in response to these reports. The Committee restricted when Plaintiff could be on campus, suspended Plaintiff starting in the 2021 summer session, and imposed no-contact orders for Roes 1, 2, and 4. JA071.[1] Plaintiff was provided the opportunity to challenge these

---

[1] A no-contact order with respect to Roe 3 was issued to Plaintiff several months later, after Roe 3 reported that she had been contacted and interviewed by a private investigator hired by Plaintiff's attorney. JA087-088.

measures, which he did.  JA071.  He therefore received an evidentiary hearing on whether the interim measures should be maintained, during which he was represented by an attorney.  JA073.  Ultimately, the Committee denied Plaintiff's request to remove the interim measures.  JA073.

### C.   The reports against Plaintiff are investigated by the Equal Opportunity and Compliance Office.

Meanwhile, the Equal Opportunity and Compliance Office reviewed the reports and proceeded under the Title IX policy for the reports by Roe 1 and Roe 2, and under the broader sexual harassment policy for the reports by Roe 3 and Roe 4.  JA078.  The Office began investigating the four reports and provided written notice to Plaintiff of its investigation.  JA076.

During the course of the investigation—which occurred over a period of approximately five months—the Office interviewed the reporting female students and more than a dozen other witnesses, producing approximately 600 pages of witness interview transcripts.  JA092, JA111.  The Office also interviewed Plaintiff on two occasions, during which he was represented by counsel.  JA092.  Plaintiff

submitted "extensive evidence" related to each complaint, evidence that included reports of voluntary polygraph testing.  JA093.

Following its investigation, and pursuant to UNC-CH's policies and Title IX's regulations, the Office provided Plaintiff the opportunity to review and provide responses to drafts of its investigation reports, which Plaintiff did.  JA095.  The Office then issued Final Investigation Reports for each of the four complaints it had received.  JA095-097, JA106.

In its findings regarding the report by Roe 3, the Office found Plaintiff responsible for "sexual assault or violence, and retaliation" and recommended him for expulsion.  JA095.  With respect to the report by Roe 4, the Office found Plaintiff responsible for "two counts of sexual assault (non-consensual sexual contact)" and also recommended Plaintiff for expulsion.  JA096.[2]

---

[2]     The final investigation reports for the Roe 1 and Roe 2 matters did not include findings or sanctions because those matters were investigated under the Title IX policy, under which findings and recommendations are not presented until after a hearing.  *See supra* 4-6.

**D.  After four evidentiary hearings, Plaintiff is found to have sexually assaulted two female students.**

After the Final Investigation Reports were completed, Plaintiff received evidentiary hearings on all four of the reports against him, each of which was presided over by a different set of hearing panelists. JA037, JA100, JA123, JA126, JA127.  These hearings took place over eight days in the spring of 2022.  JA100, JA123, JA126, JA127.  During the hearings, Plaintiff was represented by counsel and had the opportunity to present arguments and evidence on his own behalf.  *E.g.*, JA038.

At the conclusion of the hearings on the complaints by Roe 2 and Roe 3, the hearing panels credited Plaintiff's account of the events and found Plaintiff not responsible for either set of allegations.  JA126.  Specifically, with respect to the allegations by Roe 2, the hearing panel found that there was "insufficient evidence to determine by a preponderance of the evidence" that Roe 2 did not consent to the four instances of sexual contact and intercourse that she alleged had occurred.  JA126.  With respect to Roe 3, the hearing panel found Plaintiff's account "persuasive" and more credible than Roe 3's account of the events in question.  JA127.

However, the hearing panels found Plaintiff responsible for misconduct against both Roe 1 and Roe 4. JA107, JA130, JA133-134. On the Roe 1 matter, the hearing panel found Plaintiff responsible for "non-consensual sexual intercourse while Roe 1 was incapacitated." JA107. In particular, the hearing panel found that the "preponderance of the evidence demonstrated that [Roe 1] was incapacitated due to alcohol consumption, which rendered her physically helpless and substantially incapable of communicating [c]onsent to sexual contact or communicating unwillingness to engage in sexual contact." JA107. The panel also found that Plaintiff "took advantage of [Roe 1] when she was unconscious and was not deterred by her lack of consent or intoxication." JA134. The panel further found that Plaintiff "did not accept responsibility for the conduct at any time before, during, or after the hearing" and instead "attempted to cast blame on [Roe 1] during the hearing." JA134. Based on these findings, the panel issued sanctions against Plaintiff that included, among other things, suspension for one academic year. JA134.

On the Roe 4 matter, the hearing panel found Plaintiff responsible for "engaging in sexual assault or sexual violence." JA130. The panel

credited Roe 4's account over Plaintiff's. JA131. This included Roe 4's

report that during spring break in 2020, Plaintiff "put his hand on her

crotch[,] . . . attempted to lift her bathing suit," and attempted to "finger

her" without her consent. JA131. The panel also found that Plaintiff

"did not accept responsibility for the conduct, nor did he demonstrate an

understanding of the impact of his behavior to others." JA133. As a

result, the panel determined that Plaintiff's conduct "warranted a

sanction of a permanent expulsion from the UNC System." JA133.

### E.    Plaintiff appeals the hearing panels' findings of responsibility.

Plaintiff appealed the findings of the hearing panels in both the

Roe 1 and Roe 4 matters. JA135-136. UNC-CH assigned a different

appeals officer to review each appeal. JA136-137. The appeals officers

served as Vice Chancellor and Vice Provost at UNC-CH, respectively.

JA136-137. Both assigned appeal officers affirmed the decisions of the

hearing panels. JA137-139.

Plaintiff then exercised his ability to appeal the outcomes in the

Roe 1 and Roe 4 matters to the UNC-CH Board of Trustees. JA139-140.

According to Plaintiff, "[t]he Board of Trustees Panel rejected every

argument advanced by [him] in each appeal, finding there was no clear

and material error, and recommending to the full Board of Trustees that they uphold the findings and sanctions." JA141. "[T]he Board of Trustees unanimously affirmed the recommendations of the Board of Trustees Panels," and "upheld the decisions and sanctions issued in the Roe 1 and Roe 4 matters." JA141.

### F. Plaintiff sues UNC-CH and others, claiming multiple errors in the disciplinary process he received.

The day after the Board of Trustees' decisions on the Roe 1 and Roe 4 matters, Plaintiff filed this lawsuit in the Western District of North Carolina, asserting eight claims against twelve defendants. JA024-215. Plaintiff sued four institutional university defendants—the UNC System, the UNC Board of Governors, the UNC-CH Board of Trustees, and UNC-CH (collectively, the "UNC Defendants"). Plaintiff also sued eight individual employees or contractors of UNC-CH (collectively, the "Individual Defendants") who were involved in the investigation and adjudication of the reports against him.

At its heart, the complaint alleges that Plaintiff was wrongly found responsible for sexually assaulting Roe 1 and Roe 4; that the process he received was deficient; and that those errors were the result of gender bias against him. As a result, Plaintiff alleged procedural

due-process violations under 42 U.S.C. section 1983; violations of Title IX of the Education Amendments Act of 1972; breach of contract; various state-law tort claims[3]; and various claims under North Carolina's state constitution.[4]

To support these claims, Plaintiff raised various complaints about the investigation process, the hearings, and the outcome against him. On the investigation process, Plaintiff claimed that:

- UNC-CH refused to dismiss charges against Plaintiff after Roe 1 and Roe 2 withdrew their formal complaints. JA076-077.

- UNC-CH provided false information to the Emergency Evaluation and Action Committee to ensure that the Committee would not overturn Plaintiff's interim suspension. JA075-076.

- Defendant Enlow, one of the investigators, asked questions of Plaintiff differently than Roes 1-4 or other witnesses, "in an effort to catch him in inconsistencies." JA184.

---

[3] Plaintiff's state-law tort claims are for negligent hiring, supervision, and retention (Count IV); negligent infliction of emotional distress (Count V); intentional infliction of emotional distress (Count VI); and tortious interference with contract (Count VII).

[4] Plaintiff's state constitutional claims allege a deprivation of his rights to the fruits of his own labor, education, and equal protection, as well as a deprivation of his liberties, privileges, or property (Count VIII).

- Defendant Enlow "failed to pursue material evidence" from the complaining students, which differed from his request for information from Plaintiff. JA185.

Plaintiff also raised various complaints about the hearings conducted in the Roe 1 and Roe 4 matters. With respect to the hearing for Roe 1, Plaintiff claimed, among other things, that:

- The Equal Opportunity and Compliance Office "failed to redact prejudicial information" concerning other claims against Plaintiff from the hearing materials. JA096-100.

- He failed to receive proper notice of the charges against him because the original notice of investigation listed the date of the incident as "on or about November 19, 2020," but at the hearing, the panel decided to consider evidence that the incident occurred on November 12-13, 2020. JA101-103.

- He was deprived of an opportunity to fully cross-examine Roe 1 because Roe 1 was permitted to leave in the middle of the hearing. JA103-106.

With respect to the hearing for Roe 4, Plaintiff claimed in part that:

- The hearing officer, Defendant Elrod, did not allow Plaintiff to present evidence regarding Roe 4's lack of credibility. JA128-129.

- Plaintiff was deprived of the ability to cross-examine either Roe 4 or the primary witness corroborating Roe 4's account. JA132.

In addition, Plaintiff raised complaints about the hearing panels' findings. With respect to the Roe 1 findings, he alleged that:

- The hearing panel "mischaracterized" Plaintiff's testimony. JA122-123.

- The hearing panel improperly credited the testimony of Roe 1 and Roe 2 over Plaintiff's testimony. JA107-114.

- The hearing panel's findings were generally not supported by the evidence. JA114-421.

With respect to the Roe 4 findings, he alleged that:

- The hearing panel improperly credited Roe 4's account of the incident over Plaintiff's. JA131.

- The hearing panel improperly relied on a "supposed contemporaneous disclosure" made by Roe 4 to her friend, despite the fact that Plaintiff had not had the opportunity to cross-examine either student. JA132.

Based on these allegations, Plaintiff sought injunctive relief, including the reversal of the hearing panels' outcomes, findings, and sanctions; "expunge[ment]" of his disciplinary record; removal of any record of his suspension and expulsion from his disciplinary record; and reinstatement as a student at UNC-CH. JA155, JA211. He also sought compensatory and punitive damages. JA155-156.

## G. The district court partially denies Defendants' motions to dismiss.

Defendants moved to dismiss Plaintiff's claims. JA216-223.

The district court dismissed two of Plaintiff's state-law claims: negligent hiring, retention, and supervision (Count IV); and intentional infliction of emotional distress (Count VI). JA408, JA414, JA417. Plaintiff has not cross-appealed the district court's dismissal of those claims.

However, the district court denied Defendants' motion to dismiss Plaintiff's remaining claims. The court's analysis divided into four parts.

*First*, the district court rejected the UNC Defendants' argument that Plaintiff's due-process and state-law claims against them are barred by sovereign immunity.[5] Although the court acknowledged that the four UNC Defendants are "state agencies," it concluded that they may be akin to a municipality. It therefore held that the UNC Defendants had not yet shown that sovereign immunity barred Plaintiff's due-process claim against them. JA398. The court also concluded that UNC-CH had waived its sovereign immunity from

---

[5]    Plaintiff asserted a due-process claim against all UNC Defendants. JA143. Plaintiff's state-law claims—breach of contract, tortious interference with contract, and alleged violations of the state constitution—were asserted only against UNC-CH among the institutional defendants. JA193, JA207, 209.

Plaintiff's state-law claims for negligent hiring, supervision, and retention; breach of contract; and for violations of the North Carolina Constitution.[6]  JA406-408.

*Second*, the district court rejected the Individual Defendants' argument that the due-process claim against is are barred by sovereign and qualified immunity.  The court rejected the Individual Defendants' sovereign-immunity defense for the same reason that it rejected that defense as to the UNC Defendants.  JA398-399.  On qualified immunity, the court concluded that Plaintiff had "sufficiently alleged that his due-process rights have been violated" because of the severity of the consequences he received, the allegations of harm to his reputation, and the allegations of flaws in the disciplinary process.  JA400-406.  The court further held that Plaintiff's right to an unbiased process was clearly established.  JA405.

*Third*, the district court rejected UNC-CH's argument that

---

[6]     Although UNC-CH also argued that sovereign immunity barred Plaintiff's tortious interference with contract claim, the court appears to have allowed the claim to proceed to discovery without analysis.

Plaintiff had failed to plausibly allege a claim under Title IX.[7]  The

court analyzed the Title IX claim under the "erroneous outcome"

framework articulated by the Second Circuit in *Yusuf v. Vassar College*.

JA393 (citing 35 F.3d 709 (2d Cir. 1994)).  Under this framework, a

plaintiff must "allege (1) particular facts sufficient to cast some

articulable doubt on the accuracy of the outcome of the disciplinary

proceeding and (2) particular circumstances suggesting that gender bias

was a motivating factor behind the erroneous finding."  JA393 (cleaned

up).

On the first element, the court concluded that Plaintiff adequately

alleged sufficient facts suggesting that the disciplinary process was

flawed, thus placing in doubt UNC-CH's finding that Plaintiff was

responsible for sexual misconduct.  JA394-395.  On the second element,

the court concluded that Plaintiff's allegations about public pressure on

UNC-CH, as well as his allegations about the conduct of UNC-CH's

agents and employees during the disciplinary process, "tend to suggest

gender bias."  JA395.

---

[7]     Plaintiff asserted his Title IX claim against UNC-CH alone.
JA157

*Fourth*, on Plaintiff's remaining state-law claims for negligent infliction of emotional distress and tortious interference with contract, the district court rejected the Individual Defendants' argument that Plaintiff had failed to plausibly allege these claims against them. JA415, JA418.

Defendants appealed to this Court.

## SUMMARY OF THE ARGUMENT

The district court's order below erred in three distinct ways.

*First*, the district court erred by rejecting Defendants' argument that they were entitled to sovereign immunity on Plaintiff's due-process and state-law claims. JA399, JA408. As for Plaintiff's due-process claim, the district court's conclusion directly contradicts this Court's precedent. This Court has specifically held that the University of North Carolina and its constituent institutions receive the full amount of sovereign immunity also enjoyed by the State of North Carolina in federal court and that this immunity has not been waived by statute. *Huang v. Bd. of Governors of Univ. of N.C.*, 902 F.2d 1134 (4th Cir. 1990). For this same reason, the district court was wrong to reject the application of sovereign immunity to Plaintiff's due-process claim

against the Individual Defendants sued in their official capacities.  As

for Plaintiff's state-law claims, the district court erred by conflating the

State's sovereign immunity under North Carolina law with its federally-

protected sovereign immunity.

*Second*, the district court erred by declining to dismiss Plaintiff's

due-process claim against the Individual Defendants based on qualified

immunity.  JA406.  Plaintiff alleges that the Defendants did not provide

him with certain trial-like procedures during his hearings in the Roe 1

and Roe 4 matters.  But Plaintiff's own complaint shows that the

Defendants did not violate any clearly established rights.

Specifically, Plaintiff alleges that he lacked sufficient notice of the

charges against him merely because the precise date of the alleged

incident was not established until the day of the hearing.  But his

complaint makes clear that he was well aware of the *substance* of the

allegations him, and had ample opportunity to prepare a defense.  Next,

Plaintiff complains that he could not enter certain impeachment

evidence.  But even in a trial-like proceeding, due process does not

confer an unlimited right to present such evidence, and Plaintiff has

identified no abuse of discretion in the denial of Plaintiff's evidence

here.  Finally, this Court has repeatedly declined to recognize a due-process right to cross-examination in university-disciplinary proceedings.

Moreover, even if Plaintiff had identified a due-process problem here, he cannot identify a violation of any right that was clearly established.  The Individual Defendants therefore are entitled to qualified immunity on the due-process claim.  Nor has this Court or the Supreme Court ever recognized a property interest in a university education or a liberty interest in a student's reputation.  The Individual Defendants are therefore entitled to qualified immunity for this separate reason as well.

*Third*, the district court erred by declining to dismiss Plaintiff's Title IX claim.  JA395.  The court relied on Plaintiff's allegations of "public pressure" and perceived procedural violations during the investigation and adjudication of the reports.  JA395.  But none of these allegations show that gender bias was the "but for" cause of Plaintiff's expulsion, as is required to state a Title IX claim in this context.  To start, as explained above, Plaintiff failed to demonstrate procedural error in the disciplinary process.  But even if Plaintiff had done so,

courts have consistently held that procedural errors alone are not enough to show *gender bias*.  Courts have likewise made clear that general allegations of community pressure to take sexual-misconduct reports seriously do not, without more, show that a particular disciplinary process was motivated by gender bias.

For all these reasons, Defendants respectfully request that this Court reverse the judgment below and direct that Plaintiff's complaint be dismissed.[8]

## ARGUMENT

## Standard of Review

This Court reviews the denial of sovereign and qualified immunity de novo.  *Wright v. N.C.*, 787 F.3d 256, 261 (4th Cir. 2015) (sovereign immunity); *Occupy Columbia v. Haley*, 738 F.3d 107, 115 (4th Cir. 2013) (qualified immunity).

---

[8]    Plaintiff also asserted two state-law claims (for negligent infliction of emotional distress and tortious interference with contract) against the Individual Defendants in their individual capacities, which are not directly implicated by this appeal.  JA415, JA418.  However, should this Court reverse the district court and determine that Plaintiff's federal claims must be dismissed, the state-law claims should also be dismissed, without prejudice, in order to avoid "[n]eedless decisions of state law" by federal courts.  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (alteration in original).

This Court otherwise reviews a district court's denial of a motion to dismiss de novo. *Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co.*, 95 F.4th 181, 189 (4th Cir. 2024) (exercising pendent appellate jurisdiction to review the denial of a motion to dismiss).

## Discussion of Law

## I. Sovereign Immunity Bars Plaintiff's Due-Process And State-Law Claims Against Defendants.

Sovereign immunity bars Plaintiff's due-process and state-law claims against the UNC Defendants. It likewise bars Plaintiff's due-process claim against the Individual Defendants sued in their official capacities. The district court's contrary decision incorrectly departed from the Supreme Court's and this Court's well-established sovereign-immunity precedents.[9]

### A. The Constitution preserves the State's sovereign immunity.

"In our constitutional scheme, a federal court generally may not hear a suit brought by any person against a nonconsenting State."

---

[9]  Sovereign immunity is not at issue for Plaintiff's Title IX claim. UNC-CH has waived sovereign immunity by accepting Title IX funds. 42 U.S.C. § 2000d-7(a)(1); *see Litman v. George Mason Univ.*, 186 F.3d 544, 554 (4th Cir. 1999).

*Allen v. Cooper*, 589 U.S. 248, 254 (2020).  This sovereign immunity "encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities."  *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997).

States may waive the federally protected sovereign immunity that they have in federal court.  But whether they have done so is a "matter[ ] of federal law."  *Global Innovative Concepts, LLC v. Fla. Div. of Emergency Mgmt.*, No. 23-2053, --- F.4th ---, 2024 WL 3033746, at *3 (4th Cir. June 18, 2024).  And the waiver standard "is a stringent one." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985).  A "state statute or constitutional provision" must "indicate the State's willingness to be sued in *federal court*"—a "general waiver" is not enough.  *Id.* (emphasis added).  Without "unequivocal" language to this effect, courts must "decline to find" an immunity waiver.  *Id.*  That is because "a State's constitutional interest in immunity encompasses not merely whether it may be sued, but *where* it may be sued."  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984) (emphasis in original).

As shown below, the district court failed to correctly apply these principles here.

**B.    Sovereign immunity bars Plaintiff's due-process claim against the UNC Defendants.**

In the district court, Plaintiff did not dispute that the UNC Defendants are arms of the State. *See* JA309-341. Plaintiff did not, in other words, argue that the UNC Defendants lack the full amount of sovereign immunity enjoyed by the State of North Carolina in federal court.

The district court, however, sua sponte held that the UNC Defendants are not entitled to the State's sovereign immunity. JA397-399. To Defendants' knowledge, the district court is the first court to have *ever* held that the UNC System, the UNC Board of Governors, the UNC-CH Board of Trustees, and UNC-CH may lack sovereign immunity. The court based its decision on a state statute providing that the University of North Carolina is a "body politic and corporate." N.C. Gen. § 116-3. The court appeared to reason that this language waives the UNC Defendants' sovereign immunity because

municipalities are also "bodies politic and corporate" and lack sovereign immunity as a result. JA397-398.[10]

That holding squarely contradicts this Court's precedent. In *Huang*, a professor sued the UNC Board of Governors, North Carolina State University, and two university employees. 902 F.2d at 1136 n.1. Like UNC-CH here, NC State is a constituent institution of the University of North Carolina. N.C. Gen. Stat. § 116-4. Faced with a case against NC State and the UNC Board of Governors, this Court held that the professor's claims against both entities were "barred" by sovereign immunity. *Hwang*, F.2d at 1139.

The Court later reaffirmed this decision in *Maryland Stadium Authority v. Ellerbe Becket, Inc.*, 407 F.3d 255 (4th Cir. 2005). The Court explained that "[n]umerous courts have decided whether public state universities are 'arms of the state,'" and "[a]lmost universally, the

---

[10] In reaching this conclusion, the district court cited *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), which held that municipalities may be liable under section 1983. *Id.* at 688-90. The district court's reliance on *Monell* was misplaced. The Supreme Court has repeatedly held that States and state agencies, unlike municipalities, may not be sued under section 1983. *See Quern v. Jordan*, 440 U.S. 332, 343 (1979); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989).

answer has been in the affirmative." *Id.* at 262 (collecting cases).

Although the Court acknowledged that "each state university must be evaluated in light of its unique characteristics," the Court specifically cited *Huang* as an example of a case involving a public university that was "treated . . . as [an] arm[ ] of the state." *Id.* at 263.

Consistent with these decisions, North Carolina federal district courts have repeatedly held that UNC-CH and other constituent institutions of the University of North Carolina, as public state universities, are arms of the State. *See, e.g.*, *McAdoo v. Univ. of N.C. at Chapel Hill*, 248 F. Supp. 3d 705, 719 (M.D.N.C. 2017); *Costello v. Univ. of N.C. at Greensboro*, 394 F. Supp. 2d 752, 756 (M.D.N.C. 2005); *Googerdy v. N.C. Agric. & Tech. State Univ.*, 386 F. Supp. 2d 618, 625 (M.D.N.C. 2005); *Hooper v. N.C.*, 379 F. Supp. 2d 804, 812 (M.D.N.C. 2005); *Alston v. N.C. Agric. & Tech. State Univ.*, 304 F. Supp. 2d 774, 782 (M.D.N.C. 2004); *Heckman v. Univ. of N.C. at Chapel Hill*, 19 F. Supp. 2d 468, 474 (M.D.N.C. 1998); *Bartges v. Univ. of N.C. at Charlotte*, 908 F. Supp. 1312, 1332-33 (W.D.N.C. 1995), *aff'd*, 94 F.3d 641, 1996 WL 460766 (4th Cir. 1996) (per curiam) (unpublished)

(affirming "for the reasons stated in the district court's thorough opinion").

Thus, sovereign immunity bars any due-process claim that Plaintiff might bring here against the UNC Defendants.

Moreover, the district court's reasoning—that section 116-3 constitutes a waiver of sovereign immunity—also cannot be squared with this Court's decision in *Huang*. There, this Court explicitly rejected the argument that section 116-3 waives sovereign immunity. *Huang*, 902 F.2d at 1139. Specifically, the Court in *Huang* applied the well-established rule that a State's waiver of its sovereign immunity in federal court must be "stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction." *Id.* at 1138 (internal quotation marks and citations omitted). Applying this standard, the Court concluded that section 116-3 "contains no express language waiving North Carolina's constitutional immunity, nor does its language justify any inference of a waiver." *Id.* at 1139. In fact, the statute "lacks *any* indication that North Carolina has consented to suit in federal court." *Id.* (emphasis added).

In sum, the district court's decision below is irreconcilable with this Court's decision in *Huang*, where this Court held specifically that claims against the University of North Carolina are barred by sovereign immunity in federal court and that the State has not waived this immunity. The UNC Defendants therefore have sovereign immunity from Plaintiff's due-process claim.

## C. Sovereign immunity bars Plaintiff's state-law claims against the UNC Defendants.

Sovereign immunity also bars Plaintiff's claims against the UNC Defendants under state law. In reaching a contrary conclusion, the district court below conflated the sovereign immunity that the State has under North Carolina state law with the sovereign immunity that the State has under the federal Constitution in federal court.

This Court recently explained the important difference between these two sources of sovereign immunity. *Global Innovative Concepts*, 2024 WL 3033746, at *2-*3. A State's "federal-law protected sovereign immunity" raises questions of federal law. *Id.* at *2. By contrast, "any immunities or defenses a defendant may enjoy under state law" are immunities "over which each State exercises plenary control." *Id.*

As a result, whether a State has waived its sovereign immunity in federal court is a "matter[ ] of federal law," whereas "waivers of state-law created defenses or immunities are governed by state-law principles." *Id.* at *3. And as discussed above, the test for whether a State has waived its sovereign immunity in federal court "is a stringent one." *Atascadero*, 473 U.S. at 241.

Here, the district court below held that the State has waived its federally protected sovereign immunity from state-law breach-of-contract and constitutional claims. JA407. The court thus allowed Plaintiff's claims against UNC-CH for breach of contract, tortious interference with contract, and various alleged state constitutional violations—Counts III, VII, and VIII—to proceed to discovery. JA408; *see supra* n.6.

But the district court cited no unequivocal language in a state statute or constitutional provision showing that the State has agreed to subject itself to those claims *in federal court*. Instead, the district court cited state cases holding that the State has waived its sovereign immunity under state law from certain claims *in state court*. JA407; *see Corum v. Univ. of N.C.*, 413 S.E.2d 276, 291-92 (N.C. 1992) (state

constitutional claim in state court); *Smith v. State*, 222 S.E.2d 412, 424 (N.C. 1976) (state-law breach-of-contract claim in state court). Thus, the district court made the same error that this Court recently reversed in *Global Innovative Concepts*: "a failure to attend to the difference between whether a State has waived its state-law immunity from suit in state court and whether the State has waived its federal-law immunity from suit in federal court." 2024 WL 3033746, at *4.

In sum, the UNC Defendants also have sovereign immunity from Plaintiff's state-law claims.

### D. Sovereign immunity bars Plaintiff's due-process claim against the Individual Defendants sued in their official capacities.

The sovereign immunity described above also applies to state officials who are sued in their official capacity. *Ballenger v. Owens*, 352 F.3d 842, 845 (4th Cir. 2003). After all, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will*, 491 U.S. at 71.

Here, Plaintiff sued three Individual Defendants at UNC-CH—Roberts, Hall, and Rieckenberg—in their official capacities for alleged due-process violations in the course of Plaintiff's disciplinary process.

JA353. Because the State is immune from Plaintiff's claims, these government officers are likewise immune from the official-capacity due-process claim against them.

The only possible exception to these officials' immunity arises under *Ex parte Young*, 209 U.S. 123 (1908), which allows federal courts to enjoin state officers from participating in ongoing violations of federal law. But as the next section shows, Plaintiff failed to adequately allege any constitutional violation here. *See infra* Part II.

## II. The Individual Defendants Are Entitled To Qualified Immunity On Plaintiff's Due-Process Claim.

Plaintiff's due-process claim is based on his allegations that he received constitutionally inadequate process during the investigation and adjudication of the sexual-assault reports against him. Specifically, Plaintiff alleges that Defendants: (i) failed to provide him adequate notice of charges in the Roe 1 matter, (ii) declined to allow him to present certain evidence related to Roe 4's credibility, and (iii) declined to give him the opportunity to cross-examine Roe 1 and Roe 4. JA147-155. As a result, Plaintiff contends, he was deprived of a property interest in his continued education and a liberty interest in his good name and reputation. JA144-145.

Plaintiff's due-process claim against the Individual Defendants is barred by qualified immunity. This immunity prevents government officials from being sued individually over conduct that did not violate clearly established federal rights and is meant to be applied in areas where the law is "unsettled or murky." *Smith v. Gilchrist*, 749 F.3d 302, 307 (4th Cir. 2014). In other words, a public official will be subject to liability only if, at the time of the challenged conduct, "the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (cleaned up).

In analyzing this question, this Court ordinarily does not "look beyond the decisions of the Supreme Court, this court of appeals, and the highest court of the state in which the case arose." *Cantley v. W. Va. Reg'l Jail & Corr. Facility Auth.*, 771 F.3d 201, 205 (4th Cir. 2014). And while a prior case need not be identical to the instant case for a law to be "clearly established," "existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741.

Here, Plaintiff has not plausibly alleged a violation of his constitutional rights, let alone a clearly established one. Nor has Plaintiff even identified a clearly-established liberty or property interest that is protected by the Due Process Clause. For these reasons, the Individual Defendants are entitled to qualified immunity on Plaintiff's due-process claim.

## A. In the student-discipline context, due process does not require the trappings of a full criminal trial.

This Court has emphasized repeatedly that the basic elements of due process are "notice and some opportunity to be heard." *Mallette v. Arlington Cnty. Emps.' Supplemental Ret. Sys. II*, 91 F.3d 630, 640 (4th Cir. 1996). However, "[t]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Henson v. Honor Comm. of Univ. Va.*, 719 F.2d 69, 73 (4th Cir. 1983) (quoting *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 102 (1978)). Thus, although due-process requirements adhere in the context of student-misconduct cases, *Doe v. Va. Polytechnic Inst. & State Univ.*, 77 F.4th 231, 236 (4th Cir. 2023), in such settings "the requirements of due process may be satisfied by something less than a trial-like proceeding." *Henson*, 719 F.2d at 74;

*see also Doe v. The Citadel*, No. 22-1843, 2023 WL 3944370, at *2 (4th Cir. June 12, 2023) (unpublished) (same).

As this Court recently emphasized in *Virginia Polytechnic*, due process in these cases involves (1) notice "containing a statement of the specific charges and grounds which, if proven, would justify disciplinary action" and (2) a hearing "which gives university officials an opportunity to hear both sides in considerable detail."  77 F.4th at 237 (quoting *Dixon v. Ala. State Bd. of Educ.*, 294 F.2d 150, 159 (5th Cir. 1961) (cleaned up)).  At that hearing, the student should be "be given the opportunity to present . . . his own defense against the charges and to produce either oral testimony or written affidavits of witnesses in his behalf."  *Id.*

This Court has applied this test to the student-misconduct context in several recent cases.  In *Virginia Polytechnic*, the plaintiff (who was a student at the defendant university), was accused by a female student of assault and battery.  *Id.* at 233.  After the female student's report, the university opened a Title IX investigation.  *Id.* at 233-34.  Ultimately, the plaintiff received a hearing on the female student's

claims against him, was found responsible for sexual assault, and was suspended for a year and a half. *Id.*

The plaintiff brought a due-process claim against the university, alleging a bevy of complaints about the investigation and hearing he received, including that he wasn't "informed of specific charges against him" before the investigation commenced and was "denied the opportunity to challenge [the female student's] credibility" through cross-examination at the hearing. *Id.* at 237, 239.

This Court rejected these claims. The Court noted that "failure to provide clear and specific notice *at any point* that might allow for a meaningful defense is constitutionally insufficient to provide due process." *Id.* at 238 (emphasis retained). But the Court held that due process was satisfied in that case because the plaintiff had "notice of the charges against him nearly two months before his hearing." *Id.* The Court also reaffirmed that it has "never held that cross-examination is required" in a student-discipline context. *Id.* at 239.

Similarly, in *Citadel*, the plaintiff was accused of three instances of sexual misconduct by a female student. 2023 WL 3944370, at *1. The plaintiff received a hearing and was found responsible for one of the

incidents.  *Id.*  As a result, the plaintiff lost his scholarship and was

dismissed from the college.  *Id.*  He sued the college and its officials,

claiming that his due-process rights were violated because, for example,

he was not permitted to cross-examine the reporting student on certain

issues.  *Id.* at *2.  The Court rejected the plaintiff's arguments, noting

that he had been permitted to present a statement and testimony, call

witnesses, and be accompanied by a representative.  *Id.*  According to

the Court, these are "all safeguards that we have consistently held

satisfy due process."  *Id.*

These cases establish that full trial-like process is not required in

university-disciplinary proceedings.  Rather, due process is satisfied

when an accused student is afforded notice sufficient to prepare a

defense and a hearing at which he is able to present a defense with oral

or written witness testimony.

## B. The Constitution does not require the trial-like procedures Plaintiff claims, let alone clearly so.

Plaintiff alleges three discrete violations of due process in the

hearings he received.  He claims that he was deprived of notice with

respect to the Roe 1 matter because the precise date of the alleged

assault was not established until the hearing.  JA148-149.  He also

claims that he was deprived of an opportunity to be heard in the Roe 4

matter because Hearing Officer Elrod declined to allow him to introduce

certain evidence impeaching Roe 4's credibility.  JA150.  And he claims

that he was deprived of an opportunity to be heard because he was

unable to fully cross-examine Roe 1 and Roe 4.  JA149-150.

This Court's precedents do not establish that Plaintiff was entitled

to these procedural rights—let alone clearly so.  A reasonable official in

the Individual Defendants' position would not have known that these

procedural complaints constituted a violation of due process.  The

Individual Defendants are therefore entitled to qualified immunity.

> **1. Clarifying the date of the assault on Roe 1 during the hearing did not violate Plaintiff's due-process rights, much less clearly so.**

Plaintiff claims that the UNC Defendants failed to provide

sufficient notice as to Roe 1's allegations because he was informed that

the hearing panel would be focused on an encounter that occurred on

November 19.  JA101.  However, according to Plaintiff, at the hearing

on Roe 1's allegations, she clarified that the alleged encounter actually

occurred on the night of November 12-13.  JA102.  Plaintiff alleges that

this delayed notice of the date of the encounter deprived him of due process. JA148-149. This is incorrect.

To start, notice requires that Plaintiff be informed "of the specific charges and grounds which, if proven, would justify disciplinary action." *Va. Polytechnic*, 77 F.4th at 237. A violation of due process thus occurs where there has been a "[f]ailure to provide clear and specific notice at any point that might allow for a meaningful defense." *Id.* at 238.

Here, nowhere in his complaint does Plaintiff allege that he was deprived of information about the *substance* of the allegations relating to the encounter, or had not received the "specific charges and grounds" which were being investigated. On the contrary, the complaint's allegations show that Plaintiff had full notice of the basis of the charges against him long before the hearing.

First, the initial investigation notice, which was issued several months before the hearing, stated that the incident occurred "on or about" November 19. JA076-077. It is thus disingenuous for Plaintiff to suggest that he was not aware that November 19 might not have been the precise date on which the alleged assault occurred.

Second, during the pre-hearing investigation phase and approximately four months before the hearing date, Plaintiff submitted to a voluntary polygraph test. At the test, Plaintiff was asked whether he had ever had sexual contact with Roe 1 "while she was asleep, passed out, or otherwise unable to make a knowing or deliberate choice to engage in sexual contact"—the very same acts for which the hearing panel found Plaintiff to have been responsible. JA094.

Third, Plaintiff acknowledges in his complaint that he was able to prepare and submit evidence to the hearing panel that he believes "directly disputed" Roe 1's "level of incapacity" and "claims of bruising." JA114-118. This evidence included his own text messages and video and photographic evidence that would have required advanced notice to compile. JA118-121. Plaintiff's own allegations therefore show that he was aware of the factual bases of the allegations against him and had ample opportunity to prepare a meaningful defense.[11]

---

[11] If Plaintiff had truly lacked notice of the charges against him, his attorney could have sought a continuance to prepare a defense. But nowhere in his complaint does Plaintiff allege that he asked to continue the hearing and was denied. This not only shows that Plaintiff was not taken by surprise, but also that there was no due-process violation here. Courts generally "discredit arguments regarding notice where the

In sum, Plaintiff cannot show a violation of his due-process rights based on the clarification of the date of the alleged assault at the hearing. And at the very least, it would have been unclear to the Individual Defendants that such a clarification—when Plaintiff had already received ample notice of the substance of the allegations against him—deprived Plaintiff of due process. The Individual Defendants are therefore entitled to qualified immunity.

> ### 2. Hearing Officer Elrod's evidentiary ruling in the Roe 4 matter did not violate Plaintiff's due-process rights, much less clearly so.

Plaintiff also alleges that he was denied a meaningful opportunity to be heard because Hearing Officer Elrod did not allow him to introduce certain evidence challenging Roe 4's credibility. Specifically, Plaintiff had attempted to introduce evidence to provide context for Roe 4's request to continue the originally scheduled hearing due to a

---

student could have asked for a continuance but did not." *Doe v. Va. Polytechnic Inst. & State Univ.*, No. 7:21-CV-378, 2024 WL 1417977, at *14 (W.D. Va. Apr. 2, 2024) (citing *Va. Polytechnic*, 77 F.4th at 237). For instance, in *Virginia Polytechnic*, this Court concluded that the plaintiff's allegation that his witnesses could not appear in person at the hearing did not show a due-process violation in part because the plaintiff did not seek "to continue the hearing until his witnesses were available." *Id.* at 237.

"medical emergency."  JA128.  Plaintiff wished to introduce evidence that Roe 4's "medical emergency" involved a black eye and bruised knees sustained during a "drunken fight."  JA128.  Plaintiff's due-process rights were not violated by the decision to exclude this evidence, let alone clearly so.

First, this Court has already rejected the argument that due process in a university-disciplinary setting requires the boundless ability to submit any and all impeachment evidence.  *Va. Polytechnic*, 77 F.4th at 239.  This is because a meaningful opportunity to be heard requires that both sides have an opportunity to air their accounts and have those accounts scrutinized—not that they have an unlimited right to introduce any evidence they wish.  *Id.* at 237.

Second, even in trial-like settings, this Court applies an abuse of discretion standard and "will only overturn an evidentiary ruling that is arbitrary and irrational."  *Moskos v. Hardee*, 24 F.4th 289, 296 (4th Cir. 2022).  Further, the Court adds "a harmless error standard to evidentiary rulings, even where an appellant claims these rulings violated due process."  *U.S. v. Morales-Matos*, 723 Fed. App'x 213, 213 (4th Cir. 2018) (per curiam).  It follows that a court may not lightly infer

due-process violations based on a hearing officer's evidentiary decisions. That is particularly true where university officials exercise their judgment to exclude evidence because university policies explicitly allow them to do so. *See, e.g.*, *Valente v. Univ. of Dayton*, 438 Fed. App'x 381, 385 (6th Cir. 2011) (unpublished). This is equally true in the Title IX context. *See Haidak v. Univ. of Mass-Amherst*, 933 F.3d 56, 67-68 (1st Cir. 2019) (there "was nothing unfair—much less constitutionally unfair—about the Board's decision to [reject character evidence and] keep its focus on the events at issue."); *Doe v. Williams Coll.*, No. 3:20-cv-30024-KAR, 2022 WL 4099273, at *16 (D. Mass. Sept. 7, 2022) (rejecting due process challenge where the plaintiff had not "persuasively explained why [the hearing officer's] evidentiary decisions were not well within the discretion . . . afforded to her about the evidence to be submitted to the hearing panel").

Here, evidence that Roe 4 was allegedly involved in a fight has no bearing on the credibility of her report that Plaintiff sexually assaulted her. Elrod's decision to exclude evidence about the alleged fight, therefore, was an evenhanded effort to "keep [the panel's] focus on the

events at issue." *Haidak*, 933 F.3d at 68. That reasonable decision does not violate due process.

Moreover, as Plaintiff acknowledges, Elrod's decision was based on an application of UNC-CH's sexual harassment policy. JA128-129. The policy provides that character evidence, which "reflects upon the reputation, personality, qualities, or habits of an individual," "is not relevant to the determination of whether there is a Policy violation." JA294. Plaintiff has not alleged facts showing how the decision, following university policy, to exclude evidence about an unrelated "drunken fight" was an abuse of discretion.

Nor has Plaintiff alleged any non-conclusory facts suggesting how he was harmed by the exclusion of this evidence. In fact, Plaintiff concedes that he was able to attack Roe 4's credibility in a number of ways, including by introducing evidence allegedly showing inconsistencies in Roe 4's account. JA131-132. Thus, even if due process *did* require Plaintiff to have an opportunity to impeach Roe 4's credibility, his own allegations show that he had ample opportunity to do so here.

At the very least, Plaintiff's complaints regarding impeachment evidence did not violate any due-process rights that were clearly established. A reasonable official in the Individual Defendants' position would not have known that preventing Plaintiff from introducing unrelated character evidence violated his rights. This is especially so where that exclusion was consistent with UNC-CH policies—policies that are not challenged here. For this reason, the Individual Defendants were entitled to qualified immunity.

### 3. Plaintiff's due-process rights were not violated by his inability to fully cross-examine Roe 1 and Roe 4, much less clearly so.

Finally, Plaintiff alleges that Defendants violated his due-process rights by not requiring Roe 4 to attend the hearing and submit to live cross-examination. He also alleges that the hearing panel violated his due-process rights by allowing Roe 1 to leave in the middle of her cross-examination and permitting her attorney to answer questions in her place. JA149-150. But nowhere in his complaint does Plaintiff allege that he objected to this process at the time. In fact, Plaintiff concedes that his attorney proceeded with the examination in this manner. JA149-150.

In any event, this Court has never held that students in a university-disciplinary setting have a due-process right to subject reporting students to cross-examination. Plaintiff has therefore failed to allege a violation of due process here, let alone one that is clearly established.

This Court confronted a similar argument in *Virginia Polytechnic*. Although the Court observed that "courts are divided on whether due process requires cross-examination in university-disciplinary proceedings," it noted that *this Court* has "never held that cross-examination is required" in this context. 77 F.4th at 239. Likewise in *Citadel*, this Court stated that "[w]e have not found a basis in the law for importing the right to cross-examination into the academic context, and we decline to do so here." 2023 WL 3944370, at *2 (cleaned up); *Butler v. Rector & Bd. of Visitors of the Coll. of William & Mary*, 121 Fed. App'x 515, 525 (4th Cir. 2005); *Henson*, 719 F.2d 69 at 73-75; *Nash v. Auburn Univ.*, 812 F.2d 655, 664 (11th Cir. 1987); *Doe v. Fairfax Cnty. Sch. Bd.*, 384 F. Supp. 3d 598, 612 (E.D. Va. 2019). Nor is cross-examination required by Title IX or its implementing regulations. *See* Suzanne B. Goldberg, *Update on Court Ruling About the Dep't of Ed.'s*

*Title IX Regulation*, Dep't of Educ.: Off. for C.R. Blog (Aug. 24, 2021),

https://www2.ed.gov/about/offices/list/ocr/blog/20210824.html (noting

that post-secondary institutions are not subject to the regulations'

provision on cross-examination).

Plaintiff's inability to cross-examine Roe 1 and Roe 4 therefore did

not amount to a violation of due process. Regardless, even if this Court

were to recognize a cross-examination right in this context for the first

time, a reasonable official in the Individual Defendants' position could

not have known that depriving Plaintiff of the ability to cross-examine

Roe 1 and Roe 4 violated his due process rights.

***

In sum, none of the alleged procedural deficiencies identified in

Plaintiff's complaint violated due process, nor were they clearly

established. As a result, the Individual Defendants are entitled to

qualified immunity on Plaintiff's due-process claim.

### C. It was not clearly established that Plaintiff was deprived of a constitutionally protected liberty or property interest.

Even if Plaintiff had alleged a clearly established due-process

violation, the Individual Defendants would still be entitled to qualified

immunity on another independent ground:  Plaintiff failed to allege that he was deprived of a clearly established property or liberty interest.

First, Plaintiff claims that he has a property interest in his continued education at UNC-CH.  JA145.  But this Court has already held that alleged violations of "school procedures" "are insufficient by themselves to implicate the interests that trigger a federal due process claim."  *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 239 (4th Cir. 2021) (quoting *Kowalski v. Berkeley Cnty. Schs.*, 652 F.3d 565, 576 (4th Cir. 2011)).

And the Supreme Court has only assumed, without deciding, that university students have a "constitutionally protectible property right" in their "continued enrollment."  *Regents of the Univ. of Mich. v. Ewing*, 474 U.S. 214, 223 (1985).  This Court has followed the same approach, "[a]ssuming" that university students have "some constitutionally protected interest in continued enrollment."  *Tigrett v. Rector & Visitors of Univ. of Va.*, 290 F.3d 620, 627 (4th Cir. 2002).

In light of these precedents, this Court in *Sheppard* recently held that "[t]he Supreme Court and this Court's assumptions, without express recognition, hardly amount to a clearly established right."  993

F.3d at 240.  As a result, this Court affirmed the dismissal of a due-process claim against a university administrator on the ground of qualified immunity "because there was no clearly established right to continued enrollment in higher education." *Id.*

This Court's decision in *Sheppard* controls here.  Like the university student in *Sheppard*, Plaintiff in this case cannot allege a clearly established property interest in his continued enrollment based on case law from the Supreme Court and this Court.

North Carolina state law does not change this analysis.  As this Court explained in *Sheppard*, a university student could allege a property interest if state law creates one.  *Id.* at 239.  But North Carolina law does not clearly establish any such property interest.

Plaintiff alleges that his interest in continued education derives from UNC-CH's policies prohibiting unlawful discrimination and providing for fair and efficient student disciplinary proceedings.  JA145-146.  Those policies, Plaintiff claims, in turn create a "contractual right to protection against an arbitrary dismissal."  JA146.  But, to Defendants' knowledge, no North Carolina Supreme Court case has established a property interest based on internal university policies.

Second, Plaintiff claims that he has a liberty interest in his good name and reputation. JA147. But "an injury to reputation alone does not deprive an individual of a constitutionally protected liberty interest." *Tigrett*, 290 F.3d at 628. Rather, a "plaintiff must demonstrate that his reputational injury was accompanied by a state action that 'distinctly altered or extinguished' his legal status if he wants to succeed." *Shrivinski v. U.S. Coast Guard*, 673 F.3d 308, 315 (4th Cir. 2012) (quoting *Paul v. Davis*, 424 U.S. 693, 711 (1976)). That legal status, moreover, must have been "previously recognized by state law." *Paul*, 424 U.S. at 711.

Yet the district court below failed to cite—and Defendants have not found—any North Carolina Supreme Court case holding that state law recognizes a legal right to attend UNC-CH. *See* JA374-420. And, again, this Court has only gone so far as to assume, while expressly declining to decide, that a student has a liberty or property interest in her continuing reputation. *Va. Polytechnic*, 77 F.4th at 236. Without a clearly-established legal right to be a public university student, Plaintiff cannot show that his status under state law has been altered or extinguished, as he must, to overcome the Individual Defendants'

qualified immunity. *See Doe v. Univ. of Va.*, 668 F. Supp. 3d 448, 458 (W.D. Va. 2023) (holding that the plaintiff had not established a liberty interest because there was no legal right under Virginia law for any person to attend public university).

In sum, Plaintiff's failure to allege a clearly established property or liberty interest defeats his due-process claim. For this additional independent reason, the Individual Defendants are entitled to qualified immunity.

## III. The District Court Incorrectly Concluded That Plaintiff Successfully Stated A Title IX Claim.

In his Title IX claim against UNC-CH, Plaintiff alleged that the university committed procedural irregularities and improprieties during his disciplinary proceeding because the proceeding was motivated by gender bias—specifically, his status as a male respondent. JA157-193. But Plaintiff's allegations do not show that there were procedural irregularities in the disciplinary process. Nor did he show that any perceived procedural problems were caused by gender bias. The district court was therefore wrong to deny Defendants' motion to dismiss this claim.

**A.    Plaintiff's Title IX claim is properly before this Court.**

Unlike the trial court's decisions on Defendants' immunity defenses, which are subject to immediate appellate review by right, the trial court's denial of UNC-CH's motion to dismiss Plaintiff's Title IX claim is ordinarily not immediately appealable.  But this Court may still review this claim under pendent appellate jurisdiction. Specifically, because the issues underlying Plaintiff's Title IX claim are inextricably intertwined with the issues underlying the qualified-immunity appeal, this Court should exercise its jurisdiction to review the Title IX claim as part of this appeal.

Pendent appellate jurisdiction permits this Court to review an issue not otherwise subject to immediate appeal "when an issue is 'inextricably intertwined' with a question that is the proper subject of an immediate appeal." *Rux v. Republic of Sudan*, 461 F.3d 461, 475 (4th Cir. 2006) (quoting *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 51 (1995)).  "Separate rulings are 'inextricably intertwined' when the same specific question will underlie both the appealable and the non-appealable order, such that resolution of the question will necessarily

resolve the appeals from both orders at once." *Elegant Massage*, 95 F.4th at 188 (cleaned up).

This doctrine applies here. In this appeal, the Individual Defendants' qualified-immunity defense and Plaintiff's Title IX claim turn on the same question: whether the process Plaintiff received during the investigation and adjudication of his claims under UNC-CH's policies was fair and unbiased. *Supra* 14-17, 40-49.

To succeed on Plaintiff's Title IX claim, he must show that his expulsion was the result of gender bias. *Infra* 56-58. And the primary way Plaintiff has attempted to do so is by pointing to alleged irregularities in the hearing process. *Infra* 59-67. However, as discussed below, Plaintiff failed to plausibly allege such irregularities because his own complaint shows that UNC-CH followed the law and its policies during the disciplinary process that led to Plaintiff's expulsion. *Infra* 62-67.

More to the point, there is jurisdiction over Plaintiff's Title IX claim here because these same procedural issues are at the core of Plaintiff's due-process claim. *Supra* 40-49. For this reason, a decision that Plaintiff received adequate due process would resolve Plaintiff's

Title IX claim as well.  Thus, the Title IX appeal is "inextricably intertwined" with the qualified-immunity appeal, such that pendent appellate jurisdiction is warranted.

**B.    Title IX claims require plausible, particularized fact allegations showing that gender bias was the but-for cause of a plaintiff's injury.**

Title IX of the Education Amendments Act of 1972 states that "[n]o person . . . shall, on the basis of sex, be excluded from participation in . . . or be subjected to discrimination under any education program or activity receiving Federal Financial assistance."  20 U.S.C. § 1681(a). This Court has framed the pleading standard for Title IX discrimination claims as requiring allegations that "support a reasonable inference that the decisionmakers were motivated by bias."  *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 586 (4th Cir. 2015).

In the context of a Title IX claim arising out of a university-disciplinary proceeding, a plaintiff must "plausibly allege a but-for causal link between his sex and the university's challenged disciplinary proceeding."  *Kashdan v. George Mason Univ.*, 70 F.4th 694, 701 (4th Cir. 2023) (cleaned up).  In other words, a male plaintiff "must allege

adequately that the University disciplined him on the basis of sex—that is, because he is male." *Sheppard*, 993 F.3d at 243 (quoting *Doe v. Univ. of Ark.-Fayetteville*, 974 F.3d 858, 864 (8th Cir. 2020)).

Courts have repeatedly confirmed that this "causal link" between a plaintiff's sex and a disciplinary proceeding must be alleged through "*particular circumstances* that suggest gender bias was a *motivating factor* behind the erroneous finding." *Kashdan*, 70 F.4th at 701 (emphasis added) (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)); *see also Doe v. Miami Univ.*, 882 F.3d 579, 593 (6th Cir. 2018).

For example, a plaintiff alleging "background indicia of sex discrimination"—such as gender bias motivated by public pressure or demonstrated by statistical, institutional bias—"must combine those allegations with facts particular to his case." *Schwake v. Ariz. Bd. of Regents*, 967 F.3d 940, 949 (9th Cir. 2020) (cleaned up). But even where a plaintiff alleges specific procedural irregularities in his particular case, those allegations are insufficient to state a Title IX claim unless they are accompanied by plausible allegations that any procedural errors were motivated by gender bias. As the First Circuit has held,

"procedural errors are not inevitably a sign of sex bias." *Doe v. Stonehill Coll., Inc.*, 55 F.4th 302, 334 (1st Cir. 2022). And as the Second Circuit has held, such allegations, by themselves, do not "automatically permit a factfinder to reasonably infer that a university has committed sex discrimination." *Roe v. St. John's Univ.*, 91 F.4th 643, 654 (2d Cir. 2024).

Consequently, for Plaintiff to state a claim under Title IX, he must have made specific, particularized allegations that would permit a reasonable inference that his disciplinary consequences were motivated by gender bias. Plaintiff failed to do so.

## C. The district court failed to point to any specific, particularized allegations that would permit a reasonable inference of gender bias.

Below, the district court concluded that Plaintiff had adequately alleged gender bias based on two discrete sets of allegations: Plaintiff's claims that he was the victim of alleged procedural irregularities during the investigation and hearing process, and Plaintiff's allegations that UNC-CH "has faced significant public pressure over its handling of sexual misconduct complaints" and was "aware of, and responding to"

that "public pressure." JA395. But neither of these allegations is sufficient to establish a "reasonable inference" of gender bias.

First, Plaintiff's allegations do not establish that UNC-CH acted outside its policies or Title IX's implementing regulations in the disciplinary process here. But even if they did, this Court and others have been clear that allegations of procedural errors alone are not, without more, sufficient to infer gender bias. Second, this Court and others have routinely concluded that the very same types of generalized allegations regarding "public pressure" made here are insufficient to support such an inference. Accordingly, Plaintiff's Title IX claim fails.

> 1. **Plaintiff's allegations regarding unfairness in the disciplinary process were insufficient for the district court to infer gender bias.**

The district court held that Plaintiff's allegations about procedural irregularities purportedly caused by Defendants Enlow, Froehling, and Hall's actions supported an inference of gender bias. JA395 (citing allegations at JA184-191, JA195-196, JA198). But Plaintiff's allegations of procedural irregularity cannot support an inference of gender bias here.

### a. Plaintiff's allegations do not show errors in the disciplinary process.

To start, none of Plaintiff's allegations, even if true, demonstrate that actions taken by UNC-CH or its agents were procedurally irregular or in violation of Title IX policies or regulations.

In *Citadel*, this Court recently rejected similar arguments under Title IX, where the plaintiff's allegations indicated that he received "notice of the complaint and of the hearing, . . . [was] permitted . . . to present a statement and testimony, call witnesses, be accompanied by a representative, and appeal to a separate tribunal." 2023 WL 3944370, at *3. Moreover, the plaintiff failed to allege "facts demonstrating that his sex was the but-for cause of any mistreatment." *Id.* There is simply no daylight between the allegations in *Citadel* and the allegations here.

As discussed above, Plaintiff received ample process during the investigation and adjudication of the reports against him, consistent with the university's policies. *Supra* 9-14. Plaintiff was provided notice of the complaints against him. JA076; *supra* 9-10, 40-43. He participated in the investigations of each of the matters. JA092-094; *supra* 9-10. He was represented by counsel throughout the disciplinary process. JA064, JA084, JA087, JA092, JA094, JA096-095, JA104-105,

JA112, JA138-139, JA149, JA150, JA199. He had the opportunity to and, in fact, did provide a response to draft investigation reports. JA095; *supra* 9-10. He received a written "Final Investigation Report" for each complaint, which detailed the allegations and the EOC's findings. JA095-097, JA106; *supra* 10. He was provided a separate hearing for each matter. JA100, JA123, JA126-127; *supra* 11-13. He attended all four hearings—which occurred over a period of eight days— and was represented by counsel during the hearings. JA100, JA123, JA126-127; *supra* 11-13. During each hearing, he was able to present substantial evidence in his defense and against his complainants. *Supra* 41, 43. And he was offered and exercised appeal rights. JA096, JA135-136; *supra* 13-14.

Plaintiff has nevertheless alleged that he was treated unfairly in the disciplinary process, which he contends supports an inference of gender bias. Plaintiff's allegations of gender bias overlap with his due-process allegations, insofar as he claims that the clarification of the date of the Roe 1 incident at the hearing and his inability to fully cross-examine Roe 1 and Roe 4 demonstrate bias against him. JA188-189. Plaintiff also claims that gender bias caused alleged errors or

unfairness in the investigation of the reports, JA184-187, and caused the hearing panels to improperly credit Roe 1 and Roe 4's version of events over his version of events, JA188-189. However, none of these allegations plausibly suggest gender bias.

*First*, neither the clarification of the date of the alleged assault nor the deprivation of cross-examination is sufficient to show gender bias. As discussed above, Plaintiff's allegations reveal that he received ample notice of the substance of Roe 1's reports against him and was able to mount a robust defense. *Supra* 40-43.

Moreover, as discussed above, this Court's case law is clear that students do not have a right to cross-examination in a disciplinary proceeding. *Supra* 47-49. This makes sense, as "[a] school is an academic institution, not a courtroom or administrative hearing room." *Horowitz*, 435 U.S. at 88.

*Second*, Plaintiff's allegations regarding procedural irregularity in the investigations do not suggest gender bias either. Plaintiff fails to allege anywhere in his complaint that UNC-CH or its employees or agents deviated from UNC-CH's policies or Title IX regulations in conducting the hearing.

Actions consistent with policy certainly cannot be evidence of gender bias. *See, e.g.*, *Doe v. Univ. of S. Ind.*, 43 F.4th 784, 797 (7th Cir. 2022) (holding that the university did not act with "anti-male bias" by adhering to a "generally applicable" policy that applied to female students as well); *see also cf. supra* 46 (hearing officer's compliance with policy does not violate due process).

For one thing, Title IX's regulations do not require that an exact date be given in a notice of investigation. *See* 34 C.F.R. §106.45(b)(2)(i)(B). And as above, nowhere does Plaintiff allege that he was unaware of the substance of the report against him. Nor could he, since his own allegations demonstrate that he had an opportunity to review and respond to draft investigation reports, and that he received copies of the final reports well in advance of the hearings he received. JA095, JA097; *see also supra* 41-42. Likewise, neither Title IX's regulations nor UNC-CH policies require that respondents in student-discipline proceedings be afforded the right to cross-examine witnesses. *See* Goldberg, *supra*.

To the extent that Plaintiff contends that gender bias may be inferred because alleged errors or unfairness in the investigation caused

the hearing panels to arrive at erroneous conclusions, that argument misses the mark.  Pre-hearing investigation procedures have no bearing on whether or not the *outcome* of the hearing itself was erroneous.  *Doe v. Samford Univ.*, 29 F.4th 675, 690-91 (11th Cir. 2022) ("The duration and quality of the investigation are irrelevant because they relate to the pre-hearing procedure, not the merits of the decision itself." (cleaned up)).

*Third*, the hearing panels' decisions to credit Roe 1 and Roe 4 are not, by themselves, evidence of gender bias.  Indeed, courts "regularly permit factfinders to make unstated but implicit credibility determinations in more formal settings than school disciplinary hearings, such as in criminal proceedings" and "give substantial deference to the factfinder's credibility determinations."  *Id.* at 691 (quoting *U.S. v Walker*, 799 F.3d 1361, 1363 (11th Cir. 2015)).  As the Eleventh Circuit has explained, it would be improper to "hold [a student-disciplinary] hearing panel to a higher standard than we hold district courts."  *Id.*  The hearing panels' decisions to credit Roe 1 and Roe 4's testimony were therefore an appropriate exercise of their authority and insufficient to support an inference of gender bias.

Even if, for the sake of argument, Plaintiff had identified errors in the process he received (he has not), "procedural errors are not inevitably a sign of sex bias." *Stonehill*, 55 F.4th at 334; *see also Univ. of S. Ind.*, 43 F.4th at 797 ("What we have left are procedural choices that could arguably be considered mistakes. They are not enough to show a likely bias against men."). As the Seventh Circuit has acknowledged, "[f]ew trials in civil courts are error-free, but appellate courts do not quickly infer that procedural errors in a trial show the judge was biased." *Univ. of S. Ind.*, 43 F.4th at 793. Moreover, "[a]ppellate courts do not quickly infer that an erroneous result must have been caused by unlawful bias, especially in difficult credibility contests." *Id.* at 799.

For example, nowhere in his complaint does Plaintiff allege that UNC-CH treated male respondents of sexual assault allegations any differently than similarly-situated female respondents. At most, his allegations suggest that UNC-CH's investigators and hearing officers treated Plaintiff differently than the four reporting female students *in this case. E.g.*, JA184 (Investigator Enlow asked interview questions differently of Roes 1 through 4 than of Plaintiff); JA185 (Investigator

Enlow requested certain evidence from Plaintiff while declining to do the same for Roe 1). But this Court has specifically rejected claims of gender bias based on factual allegations that showed a male student who was the subject of a sexual-misconduct complaint was not treated similarly to *reporting* female students. *See Sheppard*, 993 F.3d at 237. As in those cases, "[d]eference to [Roes 1 through 4], without more, does not show that [their] treatment—or [Plaintiff's]—is attributable to sex rather than to some other reason, such as [their] status as the complainant[s]." *Stonehill Coll., Inc.*, 55 F.4th at 334; *see Samford Univ.*, 29 F.4th at 689 (noting that "pro-complainant bias" is not equivalent to *gender* bias).

In sum, Plaintiff's allegations of procedural irregularities are insufficient to suggest or infer that the process demonstrated gender bias against him. In fact, Plaintiff's own allegations demonstrate that two of the four hearing panels found *in his favor*. JA124, JA126. This, in itself, cuts against any inference of gender bias. The district court was wrong to conclude otherwise.

### 2. Plaintiff's general allegations of "public pressure" were likewise insufficient for the district court to infer gender bias.

In his complaint, Plaintiff alleged that several different types of "public pressure" on UNC-CH resulted in a disciplinary process "tilt[ed]" "in favor of complainants, who are mostly women."  JA157-180, JA325-326.  First, Plaintiff claimed that the United States Department of Education's 2011 "Dear Colleague Letter"—which provided guidance to colleges and universities in complying with Title IX— resulted in the Department "pressur[ing] colleges and universities to aggressively pursue investigations of sexual assault on campus."  JA159.  Second, Plaintiff pointed to student protests and media attention.  JA164-172, JA175-176.  Third, Plaintiff relied on a Department of Education program review of UNC-CH, an investigation by the Department's Office for Civil Rights, and a subsequent resolution agreement.  JA172-181.  But allegations of these types have routinely been rejected by courts across the country, including this Court, as supporting an inference of gender bias.

For example, in *Kashdan*, the plaintiff-professor claimed, like Plaintiff here, that gender bias could be inferred by "pressure" from the Department of Education, as well as the "general climate at [the university] to find sexual harassment accusations substantiated."  70

F.4th at 701. This Court rejected these allegations as evidence of gender bias because the plaintiff failed to "connect these generalized pressures to his case in a way that creates a reasonable inference that anti-male bias motivated [the university]'s finding that he sexually harassed his students." *Id*.

The same is true here. Plaintiff fails to allege that these general external "pressures" in any way affected his particular disciplinary process. Moreover, the face of the complaint itself demonstrates that these atmospheric details couldn't possibly have affected Plaintiff's disciplinary process. For instance, as Plaintiff acknowledges, the Dear Colleague Letter was rescinded years before the events in question here and replaced by another policy that provided him significantly more procedural protections. JA161, JA163-164. As the Eleventh Circuit has noted, a plaintiff's "allegations about a government policy that has been rescinded and replaced" cannot be used to show gender bias. *Samford Univ.*, 29 F.4th at 692.

Similarly, Plaintiff's general allegations of federal investigations and other community pressure that occurred years prior to the disciplinary process here cannot support an inference of gender bias.

The First Circuit rejected similar allegations about an OCR investigation and the "#MeToo" movement that had occurred years before the reports at issue. *Stonehill Coll., Inc.*, 55 F.4th at 335. According to the court, "the link [the plaintiff] attempt[ed] to draw between these background factors and his disciplinary proceedings [was] too weak to create a plausible inference that sex bias played a role in how the process unfolded." *Id*. at 336.

Likewise here. The specific community pressures alleged by Plaintiff occurred at least two years prior to the events in this case. JA164-172, JA175-176. And the investigations by the federal government similarly concluded at least a year prior to the reports here. JA172-173, JA176-181. Thus, allegations that these types of "pressure" resulted in gender bias in Plaintiff's disciplinary proceeding are too attenuated to support Plaintiff's Title IX claim.

In sum, Plaintiff cannot contend that the public pressure or government investigations he references were in any way linked to his particular investigation and hearing. Moreover, even putting this fatal timing problem aside, the community pressures cited by Plaintiff focused on protecting *all* students, regardless of gender. The district

court thus erred in concluding that they in any way suggest gender bias here.

## CONCLUSION

Defendants respectfully request that this Court reverse the decision below and direct that Plaintiff's complaint be dismissed.

Respectfully submitted,

JOSHUA H. STEIN
Attorney General

/s/ Lindsay Vance Smith
Lindsay Vance Smith
Special Deputy Attorney General

Nicholas S. Brod
Deputy Solicitor General

Sripriya Narasimhan
Deputy General Counsel

N.C. Department of Justice
Post Office Box 629
Raleigh, NC 27602
(919) 716-6400

*Counsel for Defendants-Appellants*

Marla S. Bowman
Litigation Counsel

Office of University Counsel
University of North Carolina
at Chapel Hill
123 W. Franklin St., Suite 600A

Chapel Hill, NC 27599-9105
(919) 962-1219

*Counsel for Defendant-Appellant*
*University of North Carolina at*
*Chapel Hill*

June 28, 2024

## REQUEST FOR ORAL ARGUMENT

Defendants respectfully request oral argument in this case. This case presents important issues, and oral argument will aid the Court in its decisional process.

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 12,925 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) & (6) because it has been prepared in a 14-point, proportionally spaced typeface.


/s/ Lindsay Vance Smith

**CERTIFICATE OF SERVICE**

I certify that on this 28th day of June, 2024, I filed the foregoing brief with the Clerk of Court using the CM/ECF system, which will automatically serve electronic copies on all counsel of record.

/s/Lindsay Vance Smith